UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GASPAR GILBERTO EK UC,

Petitioner,

v.

JULIO HERNANDEZ,

Respondent.

CASE NO. 2:26-cv-02482-DGE

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 7)

Before the Court is Petitioner's amended petition for writ of habeas corpus. (Dkt. No. 7.) For the reasons discussed below, the Court GRANTS the petition.

## I. BACKGROUND

### A. Factual Background

Petitioner, a native and citizen of Mexico, entered the United States without inspection or parole on an unknown date. (Dkt. No. 11 at 1.) On May 11, 2026, Immigration and Customs Enforcement ("ICE") agents stopped the vehicle Petitioner was driving, which was registered to a different individual for whom ICE was searching. (Dkt. No. 12-1 at 3–4.) After Petitioner

identified he was not the person for whom ICE was searching, agents asked Petitioner about his immigration status. (*Id.* at 4.) Based on Petitioner's responses, ICE determined Petitioner did not have lawful immigrant status, took him into custody, and then transported him to the Northwest ICE detention center, where he remains. (*Id.*)

On June 1, 2026, United States District Judge Tiffany M. Cartwright granted Petitioner's petition for writ of habeas corpus and directed Respondents to either release Petitioner or provide him a bond hearing under 8 U.S.C. § 1226(a). *See Villatoro-Hernandez v. Hernandez*, Case No. 2:26-cv-1764-TMC, 2026 WL 1533054, at *2 (W.D. Wash. June 1, 2026).

Petitioner appeared for a bond hearing before Immigration Judge John Odell (hereinafter, "IJ") on June 11, 2026. (Dkt. Nos. 11 at 2; 13-4 at 2; 13-6 at 2.) In support of his bond request, Petitioner presented a rental agreement valid until January 11, 2027 and rental invoicing identifying his residence with his partner since January 2024 (Dkt. Nos. 13-1 at 24–44); utility invoicing for his residence (*id*. at 45); a sponsor letter from a United States citizen who has known Petitioner for the past five years and who provided Petitioner with employment (*id*. at 17); a letter of support from Petitioner's significant other confirming their stable relationship and Petitioner's role in supporting her three children (*id*. at 46–47); various letters of support from Petitioner's church and friends in the community (*id*. at 58–69); and a report from the Washington State Patrol confirming Petitioner has no criminal history (*id*. at 70).

At the bond hearing, the government presented a form I-213 which identified Petitioner was encountered while searching for a different individual, that Petitioner identified himself to immigration officials and otherwise responded to their questioning, that Petitioner did not have any contraband on his person, that Petitioner had no prior immigration history, and that Petitioner had no criminal history. (Dkt. No. 13-2.)

After the hearing, the IJ denied Petitioner's request for bond, finding Petitioner failed to establish he was not a flight risk. (Dkt. No. 13-4.) On June 18, 2026, Petitioner appealed the IJ's bond denial order to the Board of Immigration Appeals ("BIA"). (Dkt. No. 13-5.) Thereafter, on July 10, 2026, the IJ issued a written decision. (Dkt. No. 13-6.) The IJ identified the Petitioner "used a false Social Security to work and that he never filed a federal tax return to the United States." (*Id*. at 4.) The IJ concluded that Petitioner was "a very poor bail risk" because of his "very limited ties to this country, his limited opportunities for relief from removal, and his unauthorized employment in the United States using a false identity[.]" (*Id*.) As a result, the IJ concluded Petitioner failed to establish he was not a flight risk. (*Id*.)

On August 12, 2026, the IJ issued an order denying Petitioner's applications for relief and ordering him removed to Mexico. (Dkt. No. 12-6.)

### B. Procedural History

Petitioner filed an amended petition for a writ of habeas corpus on August 3, 2026. (Dkt. No. 7.) Petitioner argues the IJ erred in finding he was a flight risk and asks the Court to either release him or order Respondents to provide a constitutionally adequate custody determination. (*Id.* at 3.) Pursuant to the Court's standard scheduling order, Respondents filed a response on August 17, 2026. (Dkt. No. 10.) Petitioner filed a reply on August 31, 2026. (Dkt. No. 14.)

## II. ANALYSIS

### A. Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV,

2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

**B. The Court Has Jurisdiction to Review the Bond Denial**

Respondents argue the Court does not have jurisdiction to review the IJ's bond determination. Respondents contend Petitioner is not seeking to remedy any constitutional or legal defect in his detention, but is instead attempting to relitigate a discretionary bond determination insulated from judicial review. (Dkt. No. 10 at 8–10.)

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, § 1226(e) does not preclude "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court . . . , we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Accordingly, "a district

court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432*4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

Petitioner argues the IJ's conclusion that he was a flight risk did not adequately explain why he is unlikely to appear at future immigration proceedings and failed to consider "substantial evidence regarding Petitioner's residence, partner and household responsibilities, employment, community ties, sponsor, and lack of criminal history." (Dkt. No. 14 at 1, 3–7.) Petitioner is not challenging the IJ's discretionary judgment, but is instead challenging "whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled." *W.T.M. v. Bondi*, Case No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026). Given the nature of Petitioner's challenge, the Court finds it has subject matter jurisdiction over Petitioner's claims.

**C. The Court Waives Any Prudential Exhaustion Requirement**

Respondents argue the Court should require Petitioner to exhaust his administrative remedies before seeking habeas relief. (Dkt. No. 10 at 5–8.) Exhaustion of administrative remedies is prudential rather than jurisdictional and may be required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)). Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the

administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

The first factor weighs against requiring prudential exhaustion. Respondents argue the BIA "has subject-matter expertise for individual immigration bond decisions." (Dkt. No. 10 at 6.) The facts in this case are undisputed. The only issue is whether the IJ considered and explained why the evidence presented at the bond hearing established that Petitioner posed a flight risk. Thus, the BIA's "expertise" in immigration bond decisions is unnecessary to generate a proper record or reach a proper decision. *See Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile").

The second factor also weighs against requiring exhaustion. Although relaxation of prudential exhaustion could encourage, as Respondents suggest, others to bypass the agency review process (Dkt. No. 10 at 6), there is value in identifying when an IJ abuses their discretion by not explaining their rationale for denying bond. Respondents assert that Petitioner only "challenges a fact-specific bond determination that lacks any novel legal question or broader guidance value beyond the circumstance presented here." (Dkt. No. 10 at 6.) The Court disagrees. Petitioner's habeas petition presents a broader issue; namely, whether the immigration courts are engaging the evidence presented at bond hearings and applying the relevant factors to such evidence in determining risk of flight. The Court, therefore, finds it beneficial to provide

the specific immigration court, which regularly handles bond hearings, guidance on the circumstances that may lead to a finding of constitutional deficiency.

As for the third factor, the Court finds it weighs against prudential exhaustion. Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error.

Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)).

Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust his administrative remedies before seeking habeas relief.

**D. Petitioner's Bond Denial Violated Due Process**

Petitioner argues the IJ's bond denial was deficient because the conclusion that he was a flight risk fails to meaningfully engage with substantial evidence regarding Petitioner's residence, partner and household responsibilities, employment, community ties, sponsorship, and lack of criminal history. (Dkt. No. 14 at 1, 3–7.) The following are factors an immigration judge may consider in making bond determinations:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the

> alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

The habeas court's review of an immigration judge's determination of flight risk is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–785 (9th Cir. 2024); *Anyanwu v. Bondi*, Case No. C25-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, No. C25-0995JLR, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may only determine whether the IJ applied the correct legal standard, not reweigh evidence. *Martinez*, 124 F.4th at 785.

The Court concludes the IJ abused his discretion when he denied Petitioner's bond request. Here, the IJ acknowledged the Petitioner's evidence filed in support of his bond request (Dkt. No. 13-6 at 3), but then never explained how he weighed such evidence in determining flight risk. The IJ's order is void of any explanation why Petitioner's fixed address, his stable relationship with his significant other, his emotional and financial support to his significant other and her children, his steady employment history, his community ties, and his lack of criminal history were of little value in determining flight risk. The IJ also did not identify why having a United States citizen sponsor carried little weight in determining flight risk. The IJ also relied on Petitioner's immigration history and the potential strength of Petitioner's claims for relief from removal to support finding a risk of flight without explaining why those factors outweighed the significant evidence showing Petitioner is fixed and stable in his community. The IJ also does

not identify how he concluded Petitioner has "very limited ties" in the United States when Petitioner offered evidence of a fixed address for the past three years, stable employment history, and a stable relationship in which he provides both emotional and financial support to his significant other and her children.

The IJ also concluded that Petitioner's use of a "false Social Security number" equates to using a "false identity to work" and that this, combined with having never filed an income tax return, raised "serious concerns regarding Respondent's stability and reliability to return to court as directed." (*See* Dkt. No. 13-6 at 4.) But the IJ never explained how prior employment without work authorization indicates Petitioner is likely to disregard instructions to appear in the future. The IJ offers no analysis tying prior unauthorized employment to flight risk—in particular, when considering that the absence of employment history would weigh in favor of finding flight risk. *See Matter of R-A-V-P-*, 27 I. & N. Dec. at 805 (identifying that "no employment history" is a factor that militates against release on bond).

In short, the IJ provides no explanation why Petitioner would be inclined to flee considering his individual circumstances, indicating a predetermination to finding flight risk. Based on the record presented, the Court finds the IJ abused his discretion.

The IJ's decision in this case is yet another example of local immigration judges disregarding evidence presented during bond hearings and failing to explain the basis for a finding of flight risk. *See Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026) ("the IJ relied on Petitioner's immigration history, employment history, and the potential strength of Petitioner's claims for relief from removal to support a finding of flight risk without explaining why those factors established flight risk or how they outweighed the significant evidence showing Petitioner is fixed and stable with his family in his community"); *Segura*

*Serrano v. Scott*, Case No. 2:25-cv-01268-LK, 2026 WL 1674357, at *9 (W.D. Wash. May 26, 2026) ("the IJ failed to provide rationale for her findings of flight risk and dangerousness and failed to engage whatsoever with the factors weighing against such findings"); *Flores Velazquez v. Hernandez*, C26-1846-SKV, 2026 WL 1815731, at *9 (W.D. Wash. Jun. 24, 2026) ("it does not appear the IJ considered, or engaged with, the significant amount of evidence in Petitioner's favor"); *Huang v. Blanche*, Case No. 2:26-cv-02157-BAT, 2026 WL 2271901, at *8 (W.D. Wash. Jul. 17, 2026) ("the IJ failed to provide a meaningful rationale for his findings of flight risk and dangerousness and failed to engage with the factors weighing for or against such findings"); *Rodriguez-Pineda v. Hernandez*, Case No. 26-2367-MLP, 2026 WL 2321531, at *6 (W.D. Wash. Aug. 11, 2026) ("the cited reasons for denying bond do not stand on their own (or in the aggregate) and it does not appear the IJ considered, or engaged with, the significant amount of evidence in Petitioner's favor"); *Vazquez v. Scott*, Case No. 2:26-cv-02515-DGE, 2026 WL 2285535, at *5 (W.D. Wash. Aug. 7, 2026) ("the IJs are providing little to no explanation in support of their findings").

**E. Appropriate Remedy**

Petitioner asks the Court to either release him or order Respondents to provide a constitutionally adequate custody determination. (Dkt. No. 7 at 3.) Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Under the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy. *See W.T.M.*, 2026 WL 262583, at *5; *Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *11 (D.R.I. Dec. 3, 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond

hearing[.]"); *Miri v. Bondi*, Case No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's immediate release after finding immigration judge abused discretion in denying petitioner's request for bond at the bond determination hearing).

## III. ORDER

For the forgoing reasons, the Court GRANTS Petitioner's amended petition (Dkt. No. 7) for a writ of habeas corpus. The Court ORDERS that Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody with reasonable conditions of supervision within ONE day of this Order.

Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

Within **TWENTY-FOUR (24)** hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody and SHALL file a copy of the conditions of supervision.

Dated this 9th day of September, 2026.

David G. Estudillo
United States District Judge